**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | Case No. 1:07 CR 367 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| **KARL B. SEE,** ) | |
| ) | |
| Defendant. ) | |

Before the Court is the Motion to Suppress and Memorandum in Support ("Motion" of "Motion to Suppress") (**ECF No. 10**). For the following reasons, the Motion is **DENIED**.

**I.**

The following assertions comprise the Court's findings of fact based on the evidence presented during the suppression hearing. Officer Eric Williams is a 15-year veteran of the Cuyahoga Metropolitan House Authority ("CMHA") police force. *Tr. 3-4*. CMHA officers are charged with patrolling CMHA properties for the general safety of the residents. *Tr. 9*.

Among the CMHA properties Officer Williams patrols is a public housing apartment complex known as Cedar Estates, located on 2190 East 30th Street, Cleveland, Ohio. *Tr. 6-7*. The area in which Cedar Estates is located (between E. 30th Street, Cedar Avenue,

Central Avenue and Community College Drive) has a reputation for illicit drug activity, domestic disturbances, robberies and assaults. *Tr. 8*, 9. It was not unusual for Officer Williams to receive more than five to ten calls a night for service from this complex. *Id*.

In April 2007, CMHA officers' particular attention was drawn to a string of robberies and assaults occurring at the Cedar Estates. *Tr. 9*. As such, the officers were directed to pay "special attention" to, among other things, persons loitering on this property who were not residents or visitors. *Tr. 11*.

At approximately 4:30 a.m. on April 22, 2007, Officer Williams had just completed a disturbance call in the lower part of Cedar Estates located near St. Vincent Charity Hospital (i.e., 2617 Central Avenue). *Tr. 13-14*. He proceeded to do a routine patrol of the rest of the Estates, checking parking lots and building accesses, when he observed three men sitting in a white Chevy sedan backed into a parking space in the parking lot of an apartment located at 2190 E. 30th Street. *Tr. 14*. His attention was drawn to the car for several reasons.

First, at roll call that evening, officers were reminded to pay special attention to persons loitering on the Cedar Estates property due to the recent rash of robberies and assaults. *See generally Tr. 14-17*. Second, the car was parked in a dimly lit area of the lot away from the building, next to the street, with no interior light on. *Id.* It was Officer Williams' experience that residents or visitors of the apartment would park next to the building, exit their cars and enter the building – and there were plenty of empty spaces next to the building. *Id*. The gentlemen in the car were just sitting there. *Id*. Third, it was 4:30 a.m. in a notorious high-crime area *See generally Tr. 14-17*. Fourth, as Officer Williams approached the Chevy, he noticed that there was no license plate on the front of it. *Id*. (After the arrest, Officer Williams

-2-

determined that the car was a new car with temporary tags on the rear end. *Tr. 17, 33-34, 78-79.*) Given these circumstances, Officer Williams thought, at best, the occupants might need assistance and, at worst, there may be drug activity occurring. *Id.* Accordingly, he pulled his car in front of the Chevy, turned his light on the vehicle and stepped out of his patrol car.[1] *Tr. 16.* As the officer exited his vehicle, Defendant Karl See, the driver of the Chevy, opened his door as if to exit and Officer Williams saw him make a dipping movement with his right shoulder. *Tr. 18.* It was Officer Williams' experience that the occupant of a car, making such a furtive movement when approached by a police officer, might be trying to hide either a weapon or drugs. *Tr. 18.* Thus, for his own protection, Officer Williams ordered the defendant back into his vehicle while Officer Williams called for backup. *Tr. 18-19.*

Shortly thereafter, Officer Azzano arrived. *Tr. 20.* The officers approached the driver side of the Chevy with their hands on their service revolvers. Officer Williams told the defendant to get out of the car and step toward the rear of the vehicle. *Tr. 21.* When the defendant exited the vehicle, Officer Azzano saw a bullet on the driver side floor board and advised Officer Williams. *Id.* Officer Williams then put the defendant in the back of his patrol car, after which he told the remaining occupants to put their hands in front of them so he could see them. *Tr. 22.* He then reached under the driver's seat and recovered a weapon with live rounds that had no serial number on it.[2] *Tr. 23-24.* Officer Williams returned to his cruiser and

---

[1] At this point, Officers Williams' and Azzano's version of the events that occurred that night depart from the defendant's version. Having observed the officers and the defendant on the witness stand, the Court finds that the officers (though their testimony was inconsistent in parts) were much more credible than the defendant – and, thus, credits the officers' version.

[2] At the suppression hearing, Officer Williams testified that he was unable to run a LEADS check on the gun to see if it was stolen because there was no serial number on it. *Tr. 23-24.*

had the defendant get out of it, told the defendant that he was under arrest for carrying a concealed weapon, advised the defendant of his *Miranda* rights, handcuffed the defendant and put him back in the patrol car. *Tr 24-25*. The remaining occupants of the Chevy were checked for outstanding warrants, and cleared to go. *Tr. 25*. Officer Williams then transported the defendant to the central prison unit of the Cleveland Police Department. *Id*.

On June 25, 2007, the defendant was indicted, under 18 U.S.C. § 922(k), with knowing possession of a firearm, shipped or transported in interstate commerce, with the manufacturer's serial number removed or obliterated. *ECF No. 1*. After arraignment and release on bond, he filed the pending Motion to Suppress the firearm obtained during the April 22, 2007 arrest. *ECF No. 10*. The defendant contends that there was neither probable cause to arrest him nor reasonable suspicion to detain him. *Id.* Therefore, the search of his car was unreasonable and the firearm that was recovered as the product of the illegal search and seizure must be suppressed. *Id*.

After reviewing the parties' briefs, *ECF Nos. 10, 14*, the Court held an evidentiary hearing on the Motion on October 11, 2007, *Minutes of Proceeding of 10/11/2007*. The Court then allowed the parties to file supplemental briefs. *ECF Nos. 21-23*. The briefs and transcript of the hearing having been filed and reviewed, the Court is prepared to issue its ruling.

**II.**

The Fourth Amendment of the United States Constitution prohibits the Government from conducting unreasonable searches and seizures of "persons, houses, papers and effects." U.S. CONST. Amend. IV. If the Court determines that an unreasonable search or seizure has occurred, the exclusionary rule applies and the evidence obtained during the unlawful

police conduct must be suppressed.  *United States v. McDaniels*, 488 F.Supp.2d 648, 652 (S.D.Ohio 2007) (*citing Silverthorne Lumber Co. V. United States*, 251 U.S. 385, 392 (1920), *Walder v. United States*, 347 U.S. 62, 64-65 (1954)).

Generally, the Fourth Amendment prohibits warrantless searches and seizures absent probable cause.  *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 678 (6th Cir. 2006) (citing U.S. CONST. Amend. IV).  An officer has probable cause to conduct a warrantless search or seizure without a warrant when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that a criminal offense is being committed. *United States v. Sanford*, 476 F.3d 391, 395 n.1 (6th Cir. 2007) (citing *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

The Fourth Amendment's protections also extend to investigatory stops of persons and vehicles that fall short of traditional arrest.  *Terry v. Ohio*, 392 U.S. 1, 16-19 (1968); *see also United States v. Cohen*, 481 F.3d 896, 898 (6th Cir. 2007) (*citing United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  Under *Terry*, an officer may stop and briefly detain a person for investigatory purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity 'may be afoot.' " *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) (*quoting Terry*, 392 U.S. at 30).

The court makes a "reasonable suspicion" determination by looking at the totality of the circumstances to decide whether the officer has a particularized and objective basis for suspecting the person stopped of criminal activity.  *United States v. Caruthers*, 458 F.3d 459, 465 (6th Cir. 2006) (inner quotation and citation omitted).  Due weight must be given, not to the

-5-

officer's inchoate and unparticularized suspicion or hunch, but to the reasonable inferences he may draw from the facts in light of his experience and training. *Terry*, 392 U.S. at 28 (citation omitted); *see also United States v. Cortez*, 449 U.S. 411, 418 (1981) (officers may draw on experience and training to make inferences from available information that "might well elude an untrained person."); *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993) (reasonable suspicion may exist even if the factors "would arouse suspicion only in someone experienced in law enforcement matters." ). The Supreme Court has noted that the reasonable-suspicion standard is a deliberately abstract concept that falls far short of the standards for probable cause and preponderance of the evidence. *Arvizu*, 534 U.S. at 274 (*citing United States v. Sokolow*, 490 U.S. 1, 7 (1989).

The scope of the *Terry* stop must be "reasonably related to the circumstances that initially justified the stop." *United States v. Richardson*, 949 F.2d 851, 856 (6th Cir. 1991). "The reasonableness of the stop depends on two factors: (1) whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. McDaniels*, 488 F.Supp.2d at 652 (*quoting United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986)).

### III.

The defendant argues that he was seized, without probable cause or reasonable suspicion in violation of the Fourth Amendment, when Officer Williams blocked his Chevy with

the patrol car; thus, the 9 mm pistol should be suppressed. The Government counters that Officer Williams was only conducting a *Terry* stop when he pulled his car in front of the Chevy, and that the brief seizure of the Chevy was justified under the circumstances. For the reasons to follow, the Court concludes that the blocking of the defendant's Chevy to determine the identity of the occupants and maintain the status quo while obtaining this information was a warrantless *Terry* seizure, that Officer Williams had reasonable suspicion justifying that seizure, and the search of the vehicle was constitutionally reasonable.

To start, the Court finds that Officer Williams articulated a particularized and objective basis for suspecting the persons stopped of criminal activity; thus, he had reasonable suspicion to conduct a *Terry* investigation of the occupants of the Chevy on April 22, 2007. He testified at the suppression hearing that the encounter took place during the early morning hours in an area reputed for drug activity, weapons-fired calls, robberies, assaults and domestic disturbances. There was a recent escalation in armed robberies and assaults at Cedar Estates and, on the night in question, CMHA officers were specifically directed to be on the lookout for persons on the property who were not residents or visitors. Officer Williams had just completed one call for service in the area, and was patrolling the remaining parking lots and building accesses for suspicious-looking persons when he observed three gentlemen sitting in a car parked in one of the lots. His attention was drawn to the car and its occupants because the car was parked away from the apartment building at 4:30 in the morning with no interior light on and the occupants just sitting there. He also noticed that there was no license plate on the front of the car. It was his experience that residents or visitors would park in a space next to the building (where plenty of spaces remained open), exit their cars and enter the building. Thus, it

was reasonable for him to deduce that the occupants of the Chevy were not residents or visitors. It was also his experience that persons loitering in that area during early morning hours may be involved in drug activity. Given the totality of Officer Williams' observations, his orders to ferret out persons on Cedar Estates property who did not belong there due to robberies and assaults, and his experience regarding criminal drug activity in the area, his decision to detain the persons in the Chevy to ask them some questions was objectively reasonable.

        The defendant argues that the parking of the patrol car in a way that blocked his car's egress constituted a "seizure" without probable cause in violation of the Fourth Amendment. The Court agrees that blocking the defendant's car constituted a Fourth Amendment "seizure." However, blocking a vehicle does not necessarily convert a *Terry* stop into a full-blown arrest. *See, e.g., United States v. Clay*, 181 Fed. Appx. 542 (6th Cir. May 18, 2006) (blocking the defendant's vehicle in a private driveway is deemed a lawful *Terry* stop); *United States v. Marxen*, 410 F.3d 326, 327 (6th Cir. 2005) (blocking a defendant's vehicle by placement of several police cars is deemed a lawful *Terry* stop); *United States v. Heath*, 259 F.3d 522, 530 (6th Cir. 2001) (a lone policeman using his cruiser to block the defendant's car is deemed a lawful *Terry* stop). Indeed, a Terry investigation necessarily involves the brief detention of a person or vehicle for investigatory purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot.[3] *Smoak*, 460 F.3d at 778 (*quoting Terry*, 392 U.S. at 30); see also *United States v. Baldwin*, 114 Fed. Appx. 675 (6th Cir. 2004) (wherein the Sixth Circuit observed that a consensual encounter becomes a *Terry*

---

[3]Officer Williams did not need probable cause to stop the defendant, as is typical where an officer pulls a car over for a traffic violation.

seizure when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave") (*quoting United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

There is no bright line rule as to how long a *Terry* stop may last before it becomes an arrest. *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, (6th Cir. 1999) (*citing United States v. Sharpe*, 470 U.S. 675 (1985)); *Crisp v City of Kenton*, No. 97-3192, 1998 WL 180561, at *3 (6th Cir. Apr. 8, 1998) (citing same). The Supreme Court has long held that a brief detention of suspicious individuals in order to determine their identities or to maintain the status quo momentarily while obtaining more information may be reasonable in light of facts known to the officer at the time. *Adams v. Williams*, 407 U.S. 143, 145-46; *see also Cole*, 1995 WL 674584, at *2 (*citing United States v. Crittendon*, 883 F.2d 326, 328 (4th Cir. 1989) (whether an official detention is a *Terry* stop or an arrest depends on whether the methods of restraint used are reasonable to the circumstances, so as to maintain the status quo and protect the officers' safety). "Brief deprivations of liberty do not convert a *Terry* stop into an arrest, provided the methods of restraint used are reasonable under the circumstances." *Cole*, 1995 WL 674584, at *2 (*citing United States v. Perate*, 719 F.2d 706, 708-09 (4th Cir. 1983)).

The Court finds that it was reasonable under the circumstances for Officer Williams to park his patrol car in front of the defendant's car while he briefly asked the occupants questions. Officer Williams was patrolling the Cedar Estates parking lots alone at 4:30 in the morning in a high-crime area, there were three men in the car, and it is not unreasonable to believe that people involved in criminal activity (specifically, robberies or drug activity) might possess weapons. *United States v. Jones*, 759 F.2d 633, 638 (8th Cir. 1985)

("Blocking [of a car in a *Terry* stop] generally will be reasonable when the suspect is in a vehicle because of the chance that the suspect may flee upon the approach of police with resulting danger to the public as well as to the officers involved."); *United States v. Tulley*, 161 F.3d 513 (8th Cir. 1999) ("Blocking a vehicle so its occupant is unable to leave during the course of an investigatory stop is reasonable to maintain the status quo while completing the purpose of the stop.").  *See also Jones*, 759 F.2d at 638 (noting factors such as the lateness of the hour, a deserted area, and a lone officer justified blocking the defendant's vehicle); *United States v. Vargas*, 633 F.2d 891, 896 (1st Cir. 1980) (boxing-in of vehicle and command that occupants raise their hands not inconsistent with investigative stop under circumstances).

Indeed, when Officer Williams exited his cruiser to ask the occupants some questions, he saw the defendant, also in the process of exiting his car, make a furtive movement as though hiding a gun or contraband under his seat.[4]  And it is not unusual for persons who see a police officer approach their cars to hide guns or contraband under their seats.  *See, e.g., United States v. Graham*, 483 F.3d 431, 439 (6th Cir. 2007) (the defendant dipping his right shoulder toward the floor as if placing a weapon under his seat is a furtive movement that may be considered in determining an officer's reasonable suspicions)*; Caruthers*, 458 F.3d at 466 ("Furtive movements made in response to a police presence may also properly contribute to an officer's suspicions."); *United States v. Edmonds*, 240 F.3d 55, 61 (D.C. Cir. 2001) (an officer's

---

[4]Defendant testified that he did not make a furtive move when he saw Officer Williams approaching.  However, after listening to the testimony of Officer Williams and the defendant, the Court found the defendant's testimony not credible.  Defendant also claimed that he arrived at 4:30 a.m. to have a romantic encounter with a woman he just met, that he knocked on her door and got no answer, and that he then went back to his car to wait in the hope that she would return.  He further claimed that he was going to loan his new car to the other two men, who had romantic encounters of their own planned.  *Tr. 61-63, 74-76*.

-10-

observation of the defendant ducking and reaching under his seat and then sitting up after the officer made his presence known is a factor to be considered in a totality-of-the-circumstances analysis).

The Court finds that Officer Williams properly exercised caution when he directed the defendant to get back in the car and called for backup once he observed the defendant make the furtive movement. Given the defendant's furtive movement and Officer Azzano's observation of a bullet in plain view on the driverside floor,[5] Officer Williams properly conducted a cursory search for weapons under the driver's seat for the protection of the officers and the remaining occupants. *See United States v. Wilson*, Nos. 06-6050, -6051, 2007 WL 3101409, at *3 (6th Cir. Oct. 19, 2007) (observing that the Supreme Court decision in *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) permits the inspection of a vehicle occupied by a person who has been lawfully detained for a Terry stop); *see also Adams v. Williams*, 407 U.S. 140, 146 (1972) ("The Court recognized in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect."); *United States v. Wilson*, – F.3d –, 2007 WL 3131682, at * (6th Cir. Oct. 29, 2007) (during a *Terry* stop, it is permissible for an officer who has reason to believe that he is dealing with an armed and dangerous individual to conduct a reasonable search of the vehicle for weapons – regardless of whether he has probable cause to arrest the individual for a crime).

---

[5] Again, the Court discredits the defendant's testimony that there was no bullet on the driverside floorboard in light of the testimony of Officers Azzano and Williams.

**IV.**

In short, the Court concludes that Officer Williams had a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot when he briefly seized the defendant and his Chevy in the early morning hours of April 22, 2007. The officer's suspicion was reasonable based on his observations, supported by his training, experience and common sense. Finally, the Court finds that the scope of the officer's search was reasonable for the safety of the officers and the occupants.

Because the search and seizure did not violate the Fourth Amendment, the evidence which flowed therefrom (i.e., the 9 mm pistol) may not be suppressed, and the Motion to Suppress (**ECF No. 10**) is hereby **DENIED**.

**IT IS SO ORDERED.**

 */s/Dan Aaron Polster     December 5, 2007*
**Dan Aaron Polster**
**United States District Judge**